### Downing v. Brown.

1. A memorandum book kept by a public officer for his own convenience, and not required to be kept by law, the entries in which could not affect any legal rights, cannot be the subject of forgery, it not being a record, or authentic matter of a public nature, or a book belonging to any public office.

2. In an action for libel, where a crime has been charged, a plea of justification setting up truth as a defense may be supported by a preponderance of evidence only.

3. In the absence of ambiguity, words must be taken to mean what they legally import. But where the language is ambiguous as applied to the plaintiff, it becomes a question for the jury, and the extraneous circumstances under which it was used may be taken into consideration to ascertain its meaning.

4. Where the defendant in an action for libel fails to sustain, or abandons a plea of justification, such failure or abandonment is evidence of malice and continued malice, and may be taken into consideration by the jury in estimating damages.

5. Controverted questions of fact are always for the jury to determine, and it is clearly error for the court to assume that any disputed fact has been established.

*Error to District Court of Arapahoe County.*

ACTION on the case for libel. The declaration, after stating the venue in the margin and the title of the court and term, was as follows :

"Jacob Downing, the plaintiff in this suit, by E. L. Smith, L. B. France and Charles & Phelps, his attorneys, complains of Henry C. Brown, the defendant in this suit, who has been summoned, etc., of a plea of trespass on the case : For that whereas the said plaintiff, before and at the time of the committing by the said defendant of the several grievances hereinafter mentioned, was a person of good name, credit and reputation, and deservedly enjoyed the esteem and good opinion of his neighbors and other worthy citizens of the Territory of Colorado. Yet the said defendant, well knowing the premises, but wickedly and maliciously intending to injure the said plaintiff and to bring him into public scandal and disgrace, and cause to be suspected and believed by those neighbors and other worthy citizens that he, the said plaintiff, had been and was guilty of forgery, and to vex, harass and oppress the said plaintiff, on, to wit : the 27th day of December, A. D. 1873, at the county of Arapahoe, in the Territory of Colorado aforesaid, wickedly, falsely and maliciously did print and publish and cause to be printed and published of and concerning the said plaintiff, in a certain newspaper called The Denver Tribune, whereof the said defendant was then and there the proprietor, a certain false, scandalous, malicious and defamatory libel, in one part of which said libel there was and is contained the following false, scandalous, malicious, defamatory and libelous matter following, of and concerning the said plaintiff, to wit :

"FORGERY AND ITS CONSEQUENCES — THE MOTION OF A CITIZEN FOR THE ARREST OF JACK DOWNING (meaning the said plaintiff).

*To the Editor of the Tribune:*

"In your paper of last evening you publish the report of a city council committee, which shows to a *certainty*, so far as I am able to judge, that J. Downing (meaning the said plaintiff) has been guilty of forgeries enough to confine him (meaning the said plaintiff) in the penitentiary not less than 200 years, could he (meaning said plaintiff) live so long. Our statute provides that any one convicted of forgery shall be punished by confinement in the penitentiary for a term of not less than one nor more than fourteen years."

And in another part of which said libel there was and is contained the following false, scandalous, malicious, defamatory and libelous matter following, of and concerning the said plaintiff, to wit:

"But there is no limitation to prosecutions for forgery. For this crime a party (meaning the said plaintiff) may be prosecuted, convicted and punished at any time during his (meaning the said plaintiff) natural life. There seems to be any number of clear cases (meaning clear cases of forgery) against Downing (meaning the said plaintiff). Why is he (meaning the said plaintiff) not arrested? Where is the district attorney? The crime of forgery by our statute (see Revised Statutes of Colorado, page 208, sec. 69) is defined as follows, viz.: Every person who shall falsely make, utter, forge or counterfeit any record or other authentic matter of a public nature, or any charter, letters patent, deed, lease, indenture, writing, obligation, etc., etc., shall be deemed guilty of forgery, and upon conviction thereof shall be punished by confinement in the penitentiary for a term of not less than one year nor more than fourteen years. I for one am in favor of having Judge DOWNING (meaning the said plaintiff) arrested and tried for forgery; who seconds the motion?"

And thereby then and there meaning that the said plaintiff was and is guilty of the crime of forgery, contrary to the statute in such case made and provided, and that the

said plaintiff should be tried for the crime of forgery; and thereby and then and there meaning that the said plaintiff was and is guilty of having falsely made, uttered, forged and counterfeited records and other authentic matters of a public nature; and also thereby then and there meaning that the said plaintiff was and is guilty of having falsely made, uttered, forged and counterfeited charters, letters' patent, deeds, leases, indentures and writings obligatory, contrary to the statute of the Territory of Colorado in such case made and provided.

*Second Count:*

And the said plaintiff further saith that the said defendant, further contriving and intending as aforesaid, afterward, to wit: On the 27th day of December, A. D. 1873, at the county of Arapahoe aforesaid, falsely and wickedly and maliciously did print and publish and cause to be printed and published of and concerning the said plaintiff in the said newspaper called The Denver Tribune, whereof the said defendant was then and there the proprietor, a certain other false, scandalous, malicious and defamatory libel, in one part of which said libel there was and is contained the following false, scandalous, malicious, defamatory and libelous matter following, of and concerning the said plaintiff, to wit:

"More facts of Jack Downing's (meaning the said plaintiff) reign. How the property interests of Denver were led to the altar. My conscience (meaning the conscience of the said plaintiff) hath a thousand several tongues, and every tongue brings in a several tale, and every tale condemns me (meaning the said plaintiff) for a villain. Perjury, foul perjury, in the highest degree; murder, stern murder, in the direst degree, all several sins, all used in each degree, throng to the bar crying all Guilty! Guilty! — *Richard III.* And yet Jack Downing (meaning the said plaintiff) affects to laugh with a low guttural sound, thus: Ha! ha!! ha!!!"

And thereby then and there meaning that the said plaintiff was and is guilty of the crime of perjury, contrary to the form of the statute in such case made and provided; and also then and there meaning that the said plaintiff was and is guilty of the crime of murder, contrary to the form of the statute in such case made and provided; and also thereby then and there meaning that the said plaintiff hath confessed to himself that he, the said plaintiff, was and is guilty of the said several crimes of perjury and murder, contrary to the form of the statute in such case made and provided.

*Third Count:*

And the said plaintiff further saith that the said defendant further contriving and intending as aforesaid, afterward, to wit: on the day and year last aforesaid, at the county of Arapahoe, aforesaid, falsely, wickedly, and maliciously did print and publish, and cause to be printed and published of and concerning the said plaintiff in the said newspaper, called The Denver Tribune, whereof he, the said defendant, was then and there the proprietor, a certain other false, scandalous, malicious and defamatory libel, in one part of which said libel there was and is contained the following false, scandalous, malicious and defamatory and libelous matter following, of and concerning the said plaintiff, to wit:

> " My conscience (meaning the conscience of the said plaintiff) hath a
>      thousand several tongues,
> And every tongue brings in a several tale, .
> And every tale condemns me (meaning the said plaintiff) for a villain.
> Perjury, foul perjury, in the highest degree;
> Murder, stern murder, in the direst degree;
> All several sins, all used in each degree;
> Throng to the bar crying all, Guilty! Guilty!"
>                          —*Richard III.*

And yet Jack Downing (meaning the said plaintiff) affects to laugh with a low guttural sound thus: Ha! ha!! ha!!!"

Thereby then and there meaning that the said plaintiff was and is guilty of the crime of perjury, and that he, the said plaintiff, being arraigned at the bar of his own conscience had then and there pleaded guilty to the charge of the crime of perjury.

*Fourth Count:*

And the said plaintiff further saith that the said defendant further contriving and intending as aforesaid, afterward, to wit: on the day and year last aforesaid, at the county of Arapahoe, aforesaid, falsely, wickedly and maliciously did print and publish, and cause to be printed and published of and concerning the said plaintiff, in the said newspaper, called The Denver Tribune, whereof the said defendant was then and there the proprietor, a certain other false, scandalous, malicious and defamatory libel, in one part of which said libel there was and is contained the following false, scandalous, malicious, defamatory and libelous matter following of and concerning the said plaintiff, to wit:

" My conscience (meaning the conscience of the said plaintiff) hath a
          thousand several tongues,
And every tongue brings in a several tale,
And every tale condemns me (meaning the said plaintiff) for a villain.
Perjury, foul perjury, in the highest degree ;
Murder, stern murder, in the direst digree ;
All several sins, all used in each degree ;
Throng to the bar crying all, Guilty ! Guilty ! "
                    —*Richard III.*

And yet Jack Downing (meaning the said plaintiff) affects to laugh with a low guttural sound thus: Ha ! ha !! ha !!!"

Thereby then and there meaning that the said plaintiff was and is guilty of the crime of murder contrary to the form of the statute in such case made and provided, that the conscience of the said plaintiff charged him, the said plaintiff, with the crime of murder as aforesaid, and that

he, the said plaintiff, had pleaded guilty to such charge of murder so made by his conscience aforesaid.

*Fifth Count:*

And the said plaintiff further saith that the said defendant further contriving and intending as aforesaid, afterward, to wit: on the 29th day of December, A. D. 1873, at the county of Arapahoe, aforesaid, falsely, wickedly and maliciously did print and publish, and cause to be printed and published of and concerning the said plaintiff in a certain newspaper, called The Denver Tribune, whereof the said defendant was then and there the proprietor, a certain other false, scandalous, malicious and defamatory libel in the words following, to wit:

"They tried to clear a murderer at Joliet, Illinois, the other day by proving insanity. It wouldn't work, and the murderer was hung. A subsequent examination of his brain proved it to be unusually correct. It would be well for Jake Downing (meaning the said plaintiff) to reflect on these things."

Thereby then and there meaning that the said plaintiff was and is guilty of the crime of murder, that when the said plaintiff should be brought to trial therefor he would be convicted and hung for the crime of murder.

*Sixth Count:*

And the said plaintiff further saith that the said defendant further contriving and intending as aforesaid, afterward, to wit: on the 29th day of December, A. D. 1873, at the county of Arapahoe, aforesaid, falsely, wickedly and maliciously did print and publish, and cause to be printed and published of and concerning the said plaintiff in a certain newspaper, called The Denver Tribune, whereof the said defendant was then and there the proprietor, a certain other false, scandalous, malicious and defamatory libel of and concerning the said plaintiff in the words following, to wit:

" Boss Tweed said he was a statesmen previous to being locked up as a felon. Wonder what Jack Downing (meaning the said plaintiff) would give as his occupation in the event of a similar contingency, which is far from unlikely."

Thereby then and there meaning that the said plaintiff is guilty of having committed felonious offenses, and that the said plaintiff will probably be convicted and incarcerated as a felon.

*Seventh Count :*

And whereas also heretofore, to wit: on the 9th day of September, A. D. 1873, according to the form of the statute in such case made and provided, an election was duly had within and for the county of Arapahoe, for the election of councilman to represent the first representative district of the Territory of Colorado in the tenth legislative assembly of the Territory of Colorado, and also for the election of a sheriff, a probate judge and divers other county officers for the said county of Arapahoe, and whereas, also, Towsland within the said county of Arapahoe was and had been before the day last aforesaid in the year last aforesaid duly appointed and designated by the board of county commissioners of the said county of Arapahoe as one of the precincts for the purposes of the election aforesaid, and whereas the said plaintiff before and at the time of the committing by the said defendant of the several grievances hereinafter mentioned, was a person of good name, credit and reputation, and deservedly enjoyed the esteem and good opinion of his neighbors and other worthy citizens of the Territory of Colorado, yet the said defendant, well knowing the premises but wickedly and maliciously intending to injure the said plaintiff, and to expose him to public hatred, contempt and ridicule, and to cause to be suspected and believed by those neighbors and other worthy citizens that the said plaintiff had been and was guilty of " stuffing the ballot-box " then and there used at the said election, and to vex, harass and oppress the said plaintiff on, to wit: the 10th day of January,

A. D. 1874, at the county of Arapahoe, aforesaid, wickedly and maliciously did print and publish and cause to be printed and published of and concerning the said plaintiff in a certain newspaper, called The Denver Tribune, whereof he, the said defendant, was then and there the proprietor, a certain other false, scandalous, malicious and defamatory libel, containing among other things the false, scandalous, malicious, defamatory and libelous matter following, of and concerning the said plaintiff, to wit:

"The ring and the ballot-box, some of the frauds of last fall's canvass (meaning the election aforesaid), Jack Downing (meaning the said plaintiff) as ring-master and ballot-box stuffer, all about the Towsland business," thereby then and there meaning that the said plaintiff was, is and had been guilty of "stuffing" the ballot-box at the election aforesaid, at the precinct of Towsland aforesaid, in the county of Arapahoe, aforesaid, and also thereby then and there meaning that he, the said plaintiff, at the election aforesaid at the precinct aforesaid, illegally and fraudulently introduced into the said ballot-box illegal and fraudulent ballots, contrary to the form of the statutes in such case made and provided, by means of the printing and publishing of which said several false, scandalous and malicious libels by the said defendant, of and concerning the said plaintiff, he, the said plaintiff, had been and is greatly injured in his aforesaid good name, reputation and credit, and brought into public scandal, infamy and disgrace, public hatred, contempt and ridicule, with and among all his neighbors and other good citizens of the Territory of Colorado, insomuch that divers of those neighbors and citizens to whom the innocence and integrity of the said plaintiff in the several premises were unknown, have on occasion of the printing and publishing of the said several libels from thence hitherto suspected and believed and still do suspect and believe the said plaintiff to have been and to be a person guilty of forgery, perjury, murder, stuffing ballot-boxes at elections, and divers fel-

onies and other offenses, and thereby the said plaintiff hath been and is greatly injured in his aforesaid good name and otherwise at, to wit: the county of Arapahoe, aforesaid, to the damage of the said plaintiff of one hundred thousand dollars and therefor he brings his suit," etc.

To this declaration the general issue was interposed by the defendant, and to the first and seventh counts the defendant filed the following special pleas, to which the plaintiff replied generally *de injuria :*

"And as to the publication of the said several words of and concerning the said plaintiff, as in the first count of the said declaration mentioned, the said defendant saith that the said plaintiff ought not to have or maintain his aforesaid action thereof against him, because he says that before the publication of the said words of and concerning the said plaintiff in the said first count mentioned, to wit: on the 10th day of January, A. D. 1868, at the county of Arapahoe, in the Territory of Colorado, aforesaid, feloniously and falsely did make, alter and forge a certain registry and record and authentic matter of a public nature in the office of the probate court of the county and Territory aforesaid, and then and there being a record and authentic matter of a public nature in the office of the said probate court, to wit: certain written statements containing descriptions of town lots in the city of Denver, in said county and Territory, called filings on town lots, and being written applications for deeds for town lots from the probate judge of said county and Territory, purporting to be made and filed in accordance with the provisions of an act of congress, entitled "an act for the relief of the citizens of Denver, in the Territory of Colorado" approved May 28, 1864. And the defendant avers that the said plaintiff feloniously and falsely did make, alter and forge the said certain filings and statements in writing aforesaid, the said filings and statements being of the tenor following, to wit: 'To the probate judge of Arapahoe county: I, M. C. Dailey, hereby apply for a deed to lots 17, 18, 19, 20, in block 67; lots 25,

26 in block 136 ; lots 26 and 27 in block 142 ; lots 5 and 6 in block 160, in the east division in the city of Denver, Colorado Territory, under the act of congress, entitled 'an act for the relief of the citizens of Denver, in the Territory of Colorado,' approved May 28, 1864, and claim the same by title from the Denver Town Company, and by improvements made thereon.

DENVER, *May* 10*th*, 1865.

M. C. DAILEY.'

And did make and forge the following written statement and record of the said probate office aforesaid, to wit: 'To the probate judge of Arapahoe county : I, M. C. Dailey, hereby apply for a deed to lots 26 and 28, 29 and 30 in block 165 ; lots 23 and 24 in block 166 ; lots 1, 2, 25 and 26 in block 232 in the east division of the city of Denver, Colorado Territory, under the act of congress, entitled 'an act for the relief of the citizens of Denver, in the Territory of Colorado,' approved May 28, 1864, and claim the same by title from the Denver Town Company, and by improvements made thereon.

DENVER, *May* 15, 1865.

M. C. DAILEY.'

To the great damage of the said city of Denver, in the county and Territory aforesaid, and contrary to the form of the statute in such case made and provided. And the defendant avers that under the acts of congress and the legislative assembly of the Territory of Colorado, providing for the entry of town sites and the disposal of the trusts created thereby, the town lots in said city of Denver which remained undisposed of by being deeded and conveyed to the respective occupants and owners of the improvements thereon, according to their respective interests, belonging to the said city of Denver in trust for the use and benefit of the inhabitants of said city, to be disposed of according to the laws of the legislative assembly of Colorado Territory, and that the lots mentioned and described in the said false

and forged written statement and applications for deeds were lots which belonged to the said city in trust, under the provisions of said acts of congress and of the legislative assembly aforesaid, and that said statements and applications for deeds, falsely made and forged as aforesaid, were by the said plaintiff placed upon the files and records of the said probate court of the said county, to wit: at the time aforesaid, and were intended by the plaintiff to defraud the said city of Denver out of the town lots aforesaid.

And the said plaintiff did by the false and corrupt making of the said written statements thereby commit the crime of forgery. Wherefore the said defendant, at the several times when, etc., in the said first count mentioned, at the county and territory aforesaid, spoke and published of and concerning the said plaintiff the said words in the said first count mentioned to have been spoken and published of and concerning the said plaintiff, as it was lawful for him to do for the cause aforesaid, and this the defendant is ready to verify. Wherefore he prays judgment, if the said plaintiff ought to have or maintain his aforesaid action thereof against him, etc.

And for a further amended plea in this behalf to the first count of the plaintiff's said declaration, the defendant comes and defends the wrong and injury when, etc., and as to the publishing of the said several words of and concerning the said plaintiff, as in the first count of said declaration mentioned, the said defendant saith that the said plaintiff ought not to have or maintain his aforesaid action thereof against him, because he says that before the publishing of said words of and concerning the said plaintiff, in the said first count mentioned, to wit: on the 10th day of December, 1867, at the county of Arapahoe and Territory of Colorado, with the intent to defraud and cheat the city of Denver in the county and Territory aforesaid, falsely, deceitfully and corruptly in and upon a certain registry and record book of filings, then and there being a record and authentic matter of a public nature in the office of the probate court

of the said county of Arapahoe and Territory of Colorado, that is to say, in the book of record of filings of written statements of the lots of the Denver town site, containing the recorded lists of filings on town lots, or record of the written statements called filings, then and there being a record of the written statements and applications for deeds for lots in the town site of the said city of Denver, and purporting to be made, filed and recorded in accordance with the provisions of the act of congress entitled an act for the relief of the citizens of Denver, in the Territory of Colorado, approved May 28, 1864, by the probate judge of said county and Territory, for the several use and benefit of the rightful owners and occupants of the said lots mentioned and set forth in said registry and record book, and made by said plaintiff when he was the probate judge of said county, as hereinafter particularly set forth, and when acting as such trustee as probate judge. And the defendant says that said registry and book of the record of said statements in writing was made and kept by the probate judges of the said county as a record and authentic matter of a public nature, and as a record of the said probate court's acts and proceedings in relation to carrying out the said trust under the said act of congress, and under the provisions of an act of the legislative assembly of the Territory of Colorado regarding the entry of town sites upon the public land, and the disposition of the trusts imposed thereby, and acts amendatory thereof. And the defendant says that the said plaintiff, while he was probate judge of said county and Territory, to wit, on the 10th day of December, 1867, falsely, feloniously and corruptly did alter and forge the said registry and record and authentic matter of a public nature in the office of the probate court of said county and Territory aforesaid, by false and corrupt insertions, interlineations and alterations made in writing and figures as follows, to wit: on page of said registry and book of record of statements numbered six, did change to block 196 in right of block 96, and on page numbered thirteen of

said book did make the following insertion, to wit: '60 Ashley Franklin 23 & 24, 105, 26, 62, 5 & 6, 136, 7 & 8, 109, East Denver, deeded.' The said plaintiff meaning thereby that lots 23 and 24 in block 105, and lot 26 in block 62, and lots 5 and 6 in block 136, and lots 7 and 8 in block 109, in the east division of the said city of Denver, had been conveyed and deeded to Ashley Franklin. And on page numbered 16 of said registry and record book of statements did make the following false insertions and interlineations, to wit: '70, .E. S. Marlow, 13, 14, 15 & 16, 46, 31 & 32, 20, 1, 2, 3 and, 4, 21, deeded.' The said plaintiff meaning thereby that lots 13, 14, 15 and 16 in block 46, and lots 31 and 32 in block 20, and lots 1, 2, 3 and 4 in block 21, had been conveyed and deeded to E. F. Marlow. And on page numbered 18 of said registry and record book of filings did make the following insertions and interlineations, to wit: '80, Alexander F. Safely, 23 and 24, 21, 19 and 20, 56, 3, and 4, 77, deeded.' The said plaintiff meaning thereby that lots 23 and 24 in block 21, and lots 19 and 20, in block 56, and lots 3 and 4 in block 77, had been deeded to Alexander F. Safely. And on page numbered 40 of said registry and record book of statements did make the following insertions and interlineations, to wit: 'Henry L. Bouthat, 5, 29, 12, 42, 11, 64, 1, 74, West Denver, deeded.' Said plaintiff meaning thereby that lot 5 in block 29, and lot 12 in block 42, and lot 11 in block 64, and lot 1 in block 74, in the west division of said city of Denver, had been duly deeded and conveyed by the probate judge of said county to Henry L. Bouthat.

And the defendant avers that said insertions and interlineations made by said plaintiff as aforesaid were falsely and fraudulently made and forged with the intent to defraud the said city of Denver. And the defendant avers that under and by virtue of the acts of Congress providing for the entry of town sites and the entry of the land occupied by the inhabitants of the city of Denver, by the probate judge of Arapahoe county, in trust for the benefit of

the owners and occupants of lots and owners of the improvements thereon, under said acts of Congress, and by virtue of the acts of the legislative assembly of the Territory of Colorado providing for the carrying into effect and the disposition of the said town lots in accordance with said trust, all the lots in said city of Denver to which there was no owners or occupants entitled to deeds from the probate judge, and all lots which remained undisposed of to individual claimants under the provisions of said acts belonged to the said city of Denver in trust for the use and benefit of all the inhabitants of said city, and the said vacant and unoccupied lots were by the provisions of said acts to be transferred to said city or sold and the proceeds thereof transferred to said city in trust for the inhabitants thereof aforesaid. And that the lots mentioned and described in the false, corrupt and forged insertions, interlineations in the above-described book of record of statements and applications for deeds, were lots which belonged to said city of Denver in trust, and which were vacant and unoccupied and remained undisposed of to individual claimants under the provisions of the said acts of Congress and of the legislative assembly aforesaid, and that said false, corrupt and forged insertions, interlineations in said record book of statements and applications for deeds for said lots, were made by said plaintiff in and upon the records of the probate court of Arapahoe county aforesaid, at the time aforesaid, and were intended by said plaintiff to defraud the said city of Denver out of the town lots belonging to the said city as aforesaid, and that said city was by said acts so defrauded.

And the said —— —— did thereby corruptly and feloniously commit the crime of forgery. Wherefore the said defendant at the several times whence, etc., in the said first count mentioned to have been spoken and published of and concerning the said plaintiff, as it was lawful for him to do for the cause aforesaid. And this the defendant is ready to verify."

Vol. III.— 74

" And as to the publishing of the said several words of, and concerning the said plaintiff, as in the seventh count of said declaration mentioned, the said defendant saith that the said plaintiff ought not to have or maintain his aforesaid action thereof against him, because he says that before the publishing of the said words of and concerning the said plaintiff, as in the said seventh count mentioned, to wit: on the 1st day of September, A. D. 1873, at the county of Arapahoe and Territory of Colorado, that the said plaintiff unlawfully, wickedly and corruptly, intending to hinder and prevent the free and indifferent election of members of the legislative assembly and other officers to be voted for at the election precinct at the election mentioned in said seventh count aforesaid, and by illegal and corrupt means to stuff the ballot-box and to cause illegal and fraudulent ballots fraudulently to be introduced into the said ballot-box used at the said voting precinct in the county and Territory for the election of officers, as mentioned in said seventh count of said plaintiff's declaration aforesaid, did; on the 3d day of September, A. D. 1873, at the county and Territory aforesaid, unlawfully, wickedly and corruptly promise one Albert Cowgill (he, the said Cowgill, being a judge of election at the said precinct and election aforesaid mentioned in the said seventh count of said plaintiff's declaration) a large sum of money, to wit: the sum of four hundred dollars, as a gift, bribe and reward to him, the said Albert Cowgill, to corruptly, wickedly and fraudulently introduce or cause and procure to be introduced a large number, to wit: one hundred illegal and fraudulent ballots into the said ballot-box at the said election aforesaid, and did then and there, in a certain directory, to wit: a city directory of the city of Denver, mark and check off a large number of names, to wit: one hundred, and deliver the said directory with the names so marked and checked off as aforesaid to said Albert Cowgill, and directed and requested him, the said Cowgill, to vote them, that is, to wickedly, corruptly and fraudulently introduce the said names on ballots into

the ballot-box aforesaid at the election mentioned and described in the said seventh count aforesaid, in order and with the intent to induce, procure and corrupt the said Albert Cowgill by means of the said bribe, gift and reward, and the marking and delivering to him of the names in the said directory, as aforesaid, to corruptly, wickedly and fraudulently stuff the said ballot-box, and introduce into the said ballot-box at the said election mentioned in the said seventh count, illegal and fraudulent ballots, to the great obstruction and hindrance of the freedom of election; and the said plaintiff did thereby commit the crimes, misdemeanors and offense of bribery, of attempting to stuff the ballot-box and to introduce fraudulent and illegal ballots into the said ballot-box, and of attempting by bribery and corrupt promises an unlawful interference in the election aforesaid. And the said defendant aforesaid says that the supposed libelous matter and words mentioned in the said seventh count of plaintiff's said declaration were all written and published solely with reference to the committing by the said plaintiff of the said acts of bribery and attempts to stuff the ballot-box hereinbefore described and set forth, and none other. Wherefore the said defendant, at the several times when, etc., in the said seventh count mentioned, at the county and Territory aforesaid, spoke and published of and concerning the said plaintiff the said words in the said count alleged, as it was lawful for him to do for the cause aforesaid. And this the said defendant is ready to verify. Wherefore he prays judgment, if the said plaintiff ought to have or maintain his aforesaid action thereof against him," etc.

The cause was tried at the April term, 1875, resulting in a verdict for the defendant, upon which judgment was entered. To reverse this judgment the plaintiff sued out this writ of error.

The "book of filings," or "memorandum" of filings, the character of which is determined in the opinion, appears from the evidence to have been "a memoranda of filings of

city lots, that were deposited in the office of the probate judge." That it was obtained and kept by the original trustee (James Hall), under the town site act, and was used by him as a matter of convenience merely, as an index to the filings. To the introduction of this book in evidence the plaintiff objected because it was immaterial, because the book was not a record, because it was not required by law to be kept, and was not an authentic matter of a public nature. The objection was overruled and an exception duly reserved.

It does not appear that any evidence was offered at the trial by the defendant to sustain the first special plea to the first count.

Of the instructions given to the jury and upon which error was assigned, it is deemed necessary to give the following :

" It is claimed on behalf of the plaintiff that the article containing quotation from Shakespeare charges the plaintiff with both the crime of murder and the crime of perjury, while the defendant asserts that it charges neither murder nor perjury, nor any other crime than forgery ; that it simply contrasts Richard with Downing, representing the former arraigned at the bar of his own conscience, and convicted by it of murder, perjury, and all other sins, and Downing, unstricken by conscience, affects to laugh at his own forgeries. In determining the true intent and meaning of this article you should look, not only at its heading, the quotation referred to, and the sentence that immediately follows the quotation, but also all of the article in its whole tenor and effect, as well to the witnesses who have testified to the understanding of its meaning, which they respectively had when they first read it, and while the subject was fresh in their minds."

The plaintiff also assigned error upon certain of the instructions, because the court, in such instructions, assumed facts to have been proved which it was the province of the jury alone to determine, and of which the following is one

of a number: "Did Downing ever have the book in his possession? Were the forged entries in the book when he received it? If they were not there in the book, were they therein when he delivered it to his successor? Were the fraudulent forged claims in Downing's handwriting disguised?" etc.

Mr. J. Q. CHARLES, Mr. E. L. SMITH, and Mr. L. B. FRANCE, for plaintiff in error.

Messrs. SYMES & DECKER, BROWNE & PUTNAM, and Mr. THOMAS M. PATTERSON, for defendant in error.

THATCHER, C. J.   This was an action on the case for libel, brought by plaintiff in error against the defendant in error in the court below.

The declaration contains seven counts. The first alleges that the defendant had charged the plaintiff with the commission of perjury; the second with the commission of perjury and murder; the third with the commission of perjury; the fourth with the commission of murder; the fifth with the commission of murder; the sixth with the commission of felonious offenses; the seventh with "stuffing the ballot-box" at a certain general election in Arapahoe county. To the whole declaration the plea of the general issue was interposed. To the first count, two pleas of justification were filed, the first of which averred that the plaintiff had forged two certain filings, or applications for lots, purporting to be signed by M. C. Dailey; and the second alleges, that the plaintiff, with intent to defraud the city of Denver, altered and forged a certain registry, or record book, and authentic matter of a public nature, in the office of the probate judge of Arapahoe county, by insertions, interlineations and alterations in writing and figures on certain designated pages of said book.

To the seventh count a plea of justification was filed.

To the counts from the second to the sixth, inclusive of both, the general issue was the sole plea.

An important inquiry relates to the character of the ".filing book" introduced in evidence. Can forgery be predicated of it under our statutes?

Sec. 69, chap. 22, p. 208, R. S., provides, "that every person who shall falsely make, alter, forge, or counterfeit any record, *or other authentic matter of a public nature* * * * * * shall be deemed guilty of forgery."

Sec. 87 of the same chapter makes it a felonious offense for any "public officer or other person to forge, deface or falsify any document or instrument recorded, or any registry, * * * * * or to alter, deface or falsify any *minute*, document, book, or any proceeding whatever, of or belonging to any public office within this Territory."

A record is defined by Bouvier, in his law dictionary, to be a written memorial made by a public officer, authorized by law to perform that function, and intended to serve as evidence of something, written, said, or done.

We are satisfied that the probate judge's memorandum-book was not required by law to be kept. It was a convenient book of reference, in which entries were made, generally by the probate judge, who was acting as trustee for the occupants of lots within the limits of the congressional grant, and occasionally by the beneficiaries' attorneys. It contained brief memoranda, purporting to give the names of certain persons who had made applications for lots—the dates such applications were made—whether a deed for the lot or lots applied for had been executed, and in some cases, whether adverse filings had been made on the same lots, and various other minutes which could only be made intelligible by oral testimony. The original applications deposited as required by law, with the probate judge, stood as pleadings in every case of contest between adverse claimants in the probate court. R. S., p. 622. But the trustee's minute in the "filing-book" served no such purpose, nor was it in any sense evidentiary. It was not an authorized memorial of the trustee's acts and proceedings. But if not a record, it is contended that it is an authentic matter of a public nature. Authentic, in legal parlance, means "vested with

all due formalities and legally attested." Webster's Dic. No such claim can be made for this book ; nor do we think that it can be asserted that it is a book " of or belonging to any public office." In our opinion, it has no *official* character.

To give to the entries in the memorandum-book, concerning which forgery is charged and proof offered, the inviolable sanctity of a record, or other authentic matter of a public nature, would be an innovation whose consequences would necessarily be mischievous. *Moore* v. *Kline*, 1 Pen. & Watts, 129 ; *In re Corryell*, 22 Cal. 179 ; *Weed* v. *Weed*, 25 Conn. 344 ; *State* v. *Young*, 46 N. H. 266.

The only adjudicated case cited by counsel for defendant in error in support of the view that an alteration or insertion of a minute in the memorandum-book, with intent to defraud (*Ream* v. *Commonwealth*, 3 Serg. & Rawle, 207), is forgery, does not go to the extent claimed by counsel. In that case, the forgery of which Ream was convicted was of an enrollment, " *directed by law*, and preserved for the use of the public."

Of what efficacy in law was the memorandum of 'filings purporting to have been made by Alexander Safely and others ?

If the memorandum had been genuine, it could affect no legal rights—it could have been the foundation of no legal liability. However reprehensible may have been the conduct of the plaintiff in error, and however corrupt his motives may have been, we are reluctantly impelled to the conclusion that, in no view of the case, were the unauthorized memoranda in the so-called "filing-book," the subject of forgery.

It is assigned for error, that the court instructed the jury that when the truth of the charge is plead in justification, the plea need only be supported by a preponderance of evidence.

As to the soundness of this instruction, the authorities are in conflict. When a person is on trial for a crime, when

life or liberty is in jeopardy, every reasonable doubt arising from the evidence as to his guilt must be resolved in favor of his acquittal. In every such case, if the jury is not satisfied, beyond a reasonable doubt, of the prisoner's guilt, however strongly the evidence may preponderate in that direction, the law will not tolerate a conviction. In civil causes a different rule generally prevails, and although many authorities except from the rule the plea of justification interposed in a civil action for libel, and require that the truth of the charge shall be established beyond a reasonable doubt, we fail to discover any controlling reason for such an exception. When a party, desiring to vindicate his character against the libelous aspersions of others, seeks redress in a court, it would seem but just that controverted questions raised by the pleadings should be tried, and a verdict rendered in accordance with the rules applicable in other civil causes.

In England, there was a substantial reason for requiring a more conclusive degree of certainty of the truth of the charge in a civil action for libel which does not apply in this country. There, if the plea of justification, where a felony had been charged, was sustained by the verdict of a jury, the verdict stood as an indictment. Says Lord KENYON, in *Cook* v. *Field*, 3 Esp. 133, "where the defendant justifies words which amount to a charge of felony, and proves his justification, the plaintiff may be put upon his trial by that verdict without the intervention of a grand jury." Here no such result follows, and the reason of the rule ceases to operate. Neither life nor liberty is in any degree imperiled by the verdict. No other consequences follow it than follows a verdict in any other civil cause. It does not take the place of an indictment. If the truth of the words published is by a preponderance of evidence proved to the satisfaction of the jury, the plea is sustained. The adoption of this rule does not change or modify the presumption of innocence which the law raises in favor of the plaintiff, nor does it waive the necessity of proving every

element that enters into the crime charged, by evidence of a kind and quantity that in the minds of the jury overturns the case made by the plaintiff.  *Ellis* v. *Buzzell*, 60 Me. 210, reported also in 11 Am. Rep. 204, is a leading case in support of this view.   See, also, *Folsom* v. *Brown*, 5 Foster, 114; *Spruill* v. *Cooper*, 16 Ala. 791; *Mathews* v. *Huntley*, 9 N. H. 147; *Kincade* v. *Bradshaw*, 3 Hawk's Law (N. C.) R. 63.

Where perjury is charged, the evidence of two witnesses, or one witness and corroborating circumstances, is necessary to sustain the plea of justification; but the requisite evidence being adduced however it may conflict with other testimony, as in any other civil case, the jury must weigh it, and will be warranted in finding a verdict in support of the plea, although they may not be satisfied of the truth beyond a reasonable doubt.   *Spruill* v. *Cooper*, cited *supra*.

What meaning the publisher designed should be attached to the language he employed, neither court nor jury, as a general rule, need inquire.   But the sense in which it may be understood by those to whom it is published is material.   In the absence of ambiguity, words must be taken to mean what they legally import, without regard to the secret intent of the publisher.  If in legal contemplation they clearly charge a felony, the publisher cannot be allowed to impute to them at the trial a different meaning.   The ordinary and necessary import of the language in Article "A," is, that the plaintiff in error had committed forgery.   Whatever meaning the defendant in error may have designed to convey, the language is not capable of any other construction. Townshend on Slander and Libel, § 139.

It is insisted that the crimes of perjury, murder and all other sins are imputed to the plaintiff in error by article "B," which is as follows:

"MORE FACTS OF JACK DOWNING'S 'REIGN.'

"HOW THE PROPERTY INTERESTS OF DENVER WERE 'LED
TO THE ALTAR.'"

> "My conscience hath a thousand several tongues,
> And every tongue brings in a several tale;
> And every tale condemns me for a villain.
> Perjury! foul perjury!! in the highest degree;
> Murder! stern murder!! in the direst degree;
> All several sins, all used in each degree,
> Throng to the bar, crying all, Guilty! Guilty!"
>
> *—Richard III.*

"And yet Jack Downing affects to laugh with a low gut-
tural sound, Ha! ha!! ha!!!"

This language, as applied to the plaintiff in error, is not
free from ambiguity, and, to ascertain its meaning, the noto-
rious extraneous circumstances (which were fully disclosed
at the trial), under which it was used, may be taken into
consideration. In the light of such circumstances, whether
the entire article, taken together, having reference not only
to the quotation, but to the heading and concluding sentence,
are to be interpreted as charging the plaintiff in error with
the crimes of murder and perjury, and all other sins, or as
only contrasting Richard with the plaintiff in error, "rep-
resenting the former arraigned at the bar of his own con-
science, and convicted by it of murder, perjury, and all
other sins, and the plaintiff in error, unstricken by con-
science, affecting to laugh at his own forgeries," with the
commission of which the defendant in error had before
charged him in the Denver Tribune, of which he was the
proprietor, was properly submitted to the jury.

The effect of the language in article "B" upon the com-
munity (taken as a whole, its meaning is doubtful) could
only be determined by a jury, after hearing the testimony
of witnesses as to the occasion upon which, and the circum-
stances under which the language was used. In order to
ascertain its sense, the jury should be made to occupy, as

far as possible, the situation of the parties to whom it was published. Says Townshend on Slander and Libel, p. 166 : "For the purpose of its construction, language is to be regarded not merely with reference to the words employed, but according to the sense or meaning which, *all the circumstances of its publication considered,* the language may be fairly presumed to have conveyed to those to whom it was published. The language is always to be regarded with reference to what has been its effect, actual or presumed, and the sense is to be arrived at *with the help of the cause and occasion of its publication.*"

Thus, in *Van Rensselaer v. Dale,* 1 Johns. Cases, 279, the language, "John Keating is as damned a rascal as ever lived, and all who joined his party and the procession on the Fourth of July are a set of black-hearted highwaymen, robbers and murderers," in view of the concomitant circumstances, and having reference to the transaction to which it related, did not, it was held, import that Keating and his party were either highwaymen, robbers or murderers. *Quinn v. O'Gara,* 2 E. D. Smith, 388.

The instructions, so far as variant from the rules here laid down for the purpose of determining the meaning of the language used, are erroneous.

Although the instruction that "the defendant is justified in law, and exempt from all responsibility if the matter be true," would be unobjectionable if confined to the counts to which the truth was specially plead in justification, it tended, in the unrestricted form in which it was given, to mislead the jury. Pleas of justification were interposed only to the first and seventh counts. The general issue was the only response to the other five, under which truth could not be proved in justification. The truth must always be specially plead. *Porter v. Botkins,* 59 Penn. 484. Townshend on Slander and Libel, § 409 ; Starkie on Slander and Libel, 543*.

• The court refused to instruct the jury, upon the request of the plaintiff, as follows :

"The jury are instructed that if a material part of a plea of justification fails, the plea fails altogether, and if a defendant in an action of libel interposes a plea of justification, and abandons or fails to prove his plea, such failure to prove, or abandonment of the plea, may be taken into consideration by the jury in estimating damages. It is evidence tending to show malice, and continued malice."

The refusal was error. This instruction correctly states the law, and was warranted by the evidence. When the defendant republishes a criminal charge by putting it on the records of the court, he does it at his own risk. If at the trial he fails to prove its truth, he intensifies the injury originally done to the plaintiff. In such case, the failure of truth may properly be considered in estimating damages. *Updegrove* v. *Zimmerman*, 13 Penn. 621 ; *Fero* v. *Ruscoe*, 4 N. Y. 165; *Jackson* v. *Stetson*, 15 Mass. 48 ; *Wilson* v. *Nations*, 5 Yerg. 211 ; *Spencer* v. *McMasters*, 16 Ill. 405.

The court erred in assuming, in certain parts of its charge, that forgery and the other crimes imputed to plaintiff in error, had been proved ; and that the question for the jury to determine was, whether the plaintiff in error had committed them.

Controverted questions of fact are exclusively for the jury, and it was clearly error in the court to assume that any of the facts in dispute had been established. No authorities need be cited in support of a doctrine so universally recognized.

The judgment of the court below must be reversed with costs and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*