In re WICK COMMUNICATIONS
COMPANY, d/b/a The Montrose
Daily Press, Plaintiff,

v.

MONTROSE COUNTY BOARD OF
COUNTY COMMISSIONERS and Dennis Hunt, Montrose County Manager.

No. 03SA194.

Supreme Court of Colorado,
En Banc.

Dec. 15, 2003.

Brooks & Brooks, LLC, John A. Brooks, Aaron J. Brooks, Montrose, Colorado, Attorneys for Plaintiff.

.

Paul C. Sunderland, Grand Junction, Colorado, Attorney for Defendant.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

This case comes before us under C.A.R. 21. At the request of the defendant, we issued a rule to show cause why a writ of prohibition should not issue to the district court barring enforcement of the district court's order mandating the defendant to produce his diary to the court for an in camera review. The defendant questions whether the district court is authorized to inspect his diary to determine whether it is a public record under circumstances where the Colorado Public (Open) Records Act (CORA) applies only if the diary is a public record. Because we cannot decide whether the trial court is authorized to order an in camera review without first determining whether CORA applies, we necessarily begin our analysis with a discussion of whether the Act applies. We adopt the federal test for determining whether the federal public records act, the Freedom of Information Act (FOIA) applies: the plaintiff must show that a public entity: (1) improperly; (2) withheld (3) a public record. Additionally, we hold that in cases where it is unclear whether the custodian of the record holds the record in an individual or official capacity, and thus whether the record is private or public, the requesting party must make a threshold showing that the document is likely a public record. We find that the plaintiff in this case could not make the required showing that the defendant's diary is likely a public record. Consequently, we find that CORA does not apply and therefore the trial court did not have authority to order an in camera review.

## II. Facts and Procedure

After the Montrose County Manager, Dennis Hunt, fired Montrose County's former airport manager, David Miller, Miller requested a review of his termination with the Board of County Commissioners. In preparation for that hearing, Hunt wrote an outline of events that he had considered in his decision to fire Miller. Although it is unclear

from the incomplete record before us, it appears that the outline included edited transcriptions of excerpts from Hunt's diary. This outline was made available to the Daily Press. Hunt did not produce the diary itself.

After the hearing, the Montrose Daily Press requested, under CORA, photocopies of "any and all pages from the diary ... discussed and used during a public grievance hearing for former Montrose Regional Airport Manager Dave Miller." The Daily Press's first request was made to the Montrose County Clerk and Recorder's office. In response, the County Clerk and Recorder stated that she did not have custody or control of the requested records and referred the Daily Press to Hunt. Hunt also responded, thus acting before the Daily Press made an official request to him, stating that he did not believe his diary to be a public record. Nonetheless, Hunt offered to have pages relating to Miller copied by a neutral third party and given to the Daily Press. Hunt conditioned this offer on obtaining a satisfactory release from Miller that Miller would not take action against Hunt for releasing the records. The Daily Press rejected Hunt's offer, maintaining that the diary was a public record subject to disclosure.

The Montrose Daily Press then sued Montrose County and Hunt, in both his official and individual capacities, for disclosure of Hunt's personal diary. Montrose County and Hunt responded that the diary is not a public record under the Act. Consequently, they moved to dismiss for lack of subject matter jurisdiction, arguing that the court did not have jurisdiction to compel disclosure of a private record.

The trial court dismissed the claims against the County and Hunt individually. However, the trial court ruled that in order to decide whether the diary is a public record, it would need to conduct an in camera review. The trial court thus ordered Hunt, in his official capacity, to produce his personal diary.

Faced with the decision of disclosing the entire contents of his personal diary or risking citations for contempt and prosecution,

Hunt petitioned this court for a rule to show cause why a writ of prohibition should not issue to the trial court, barring enforcement of the court's order of production. We issued a rule to show cause. Because we find that CORA does not apply to a private diary, and therefore that the trial court exceeded its authority by issuing its order, we now make the rule absolute.

### III. Analysis

We decide that in order to show that CORA applies, the plaintiff must show that a public entity: (1) improperly; (2) withheld; (3) a public record. In a case such as this one, where the disagreement centers on whether the requested document is a public record, we hold that the court must make an initial determination of whether the document is likely a public record. In the unique situation where the parties dispute whether a requested document is public or private, and there exists the question of whether the custodian holds it in a personal or official capacity, we place the initial burden on the requesting party to make a threshold showing that the document is likely a public record. If the plaintiff makes that initial offer of proof, then the burden shifts to the custodian of the document to demonstrate the contrary.

We find that the Montrose Daily Press did not meet the required threshold of proof that a private diary was likely a public record. We therefore hold that CORA does not apply to the defendant's diary and consequently the trial court may not conduct an in camera review of the diary.

### A. Determining Whether CORA Applies

A trial court cannot allow a suit to proceed under CORA without first determining that the Act applies. We have not previously discussed the necessary prerequisites for the provisions of CORA to apply. Under the federal equivalent to CORA, the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(B) (2000), application of FOIA is dependent on a showing that an agency: (1) improperly; (2) withheld; (3) agency records.[1] *Kissinger v. Reporters Comm. for*

---

1. FOIA states specifically:

On complaint, the district court of the United

*Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). Although Colorado's statute is not identical to its federal counterpart, it also allows for a complainant to apply to the district court for relief when access to a record is denied.[2] § 24–72–204(5), 7B C.R.S. (2003). Therefore, though our statutory language differs, the intent is the same: an agency cannot improperly withhold agency records, and if it does so, the courts are empowered to remedy the situation.

As we find that the federal test for the application of FOIA is consistent with CORA's goals, we adopt it now. Thus, in order to show that CORA applies, a plaintiff must show that the public entity in question: (1) improperly; (2) withheld; (3) a public record. All three of these prongs must be shown or the Act will not apply.

## B. Challenge to CORA's Application

In the present case, the dispute over CORA's application centers on the third prong of the test: whether the requested record is a public record.[3] To decide whether a requested document is a public record, we must look at several sub-issues. First, we decide who has the burden of proof to show whether the diary is a public record. Second, we determine the degree of protection appropriate for private writings in a public records case, balancing the goal of open government with considerations of individual privacy. Finally, we apply our analysis to the facts of this case. We hold that when a public records request is made for an arguably private document held by a public official, the requesting party must show that the document is likely a public record in order to show that CORA applies.

## 1. Challenge to CORA's Application: Burden of Proof

 Generally, the plaintiff has the burden to present facts to establish a claim under a particular act. However, under FOIA, the U.S. Supreme Court has held that the custodian of a record has the burden to show that the record is not an agency (public) record. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n. 3, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). Therefore, even though the plaintiff has the burden of proof to show that CORA applies, when the parties dispute whether a document fits within the definition of a public record, in most cases the burden will fall on the custodian to show that the record is not a public record.

Ordinarily, we agree with the U.S. Supreme Court that placing the burden of proof on the custodian of the record makes sense. In most cases, the custodian of a requested public record is a public entity. If a party requests a document that the public entity believes to be outside of the provisions of CORA, either because the public entity thinks it is not a public record as defined by CORA, or because it falls under one of the public record exceptions, the public entity is in the best place to demonstrate why CORA does not apply. This rule is consistent with both the public policy behind CORA, which favors disclosure, and the common sense notion that the burden should be on the party with the information necessary to explain why CORA does not apply to the requested document. *See* §§ 24–72–201, 204(6)(a), 7B C.R.S. (2003) (public records are to be open for inspection) (burden on custodian to show that disclosure would do substantial injury to the public interest).

Nonetheless, the rationale for requiring the custodian to show that a document is not a public record does not extend to a situation

States ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.
5 U.S.C. § 552(a)(4)(B) (2000).

2. CORA states in pertinent part:
[A]ny person denied the right to inspect any record covered by this part 2 may apply to the district court of the district wherein the record

is found for an order directing the custodian of such record to show cause why the custodian should not permit the inspection of such record....
§ 24–72–204(5), 7B C.R.S. (2003).

3. Because the parties have not presented any issues regarding the first two prongs of the test, we do not address those prongs.

where the custodian is not a public entity. In a case such as the one before us, where the custodian of the record has both a private and an official capacity, determining in what capacity the document is held resolves the underlying question of whether the document is a public record. If Hunt holds the document in his official capacity as County Manager, then the document is clearly a public record. Conversely, the document is not a public record if Hunt keeps it in his individual capacity. Thus, the premise of the normal situation, that the public entity is in the best position to provide information about the document, is not true when it is unclear whether the County, acting through its County Manager, is the custodian, or whether Hunt as an individual possesses that information. Because this approach entails resolving the entire case, and inspecting a personal diary to resolve a threshold question of whether the Act even applies, we do not find it to be a proper placement of the burden in this unique circumstance.

■ We hold that in cases where it is not clear whether the custodian holds a record in an individual or official capacity, and thus whether the record is private or public, the requesting party must make a threshold showing that the document is likely a public record. Therefore, the requesting party must show that the requested material is likely a public record as defined by CORA: it was made, maintained, or kept by a public entity. As this initial showing requires only that the requesting party demonstrate that the document is likely to be a public record for purposes of establishing that the Act applies, not that it is definitively a public record, we do not find this requirement to be overly burdensome. Furthermore, it is consistent with both CORA, which seeks to ensure an open government, and our prior case law protecting individuals' privacy. We turn to those considerations now.

### 2. Balancing Open Government with the Privacy of Public Officials

Placing a greater burden on a party requesting a document that may not be a public record is in harmony with both the intent of CORA and with our previous cases protecting individuals' private documents.

Generally, the intent behind CORA is stated in the legislative declaration: "It is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times...." § 24–72–201. CORA limits disclosure requirements, however, to public records, which the Act defines: "'Public records'" means and includes all writings made, maintained, or kept by the state, ... or political subdivision of the state ... for use in the exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds." § 24–72–202(6)(a)(I).

■ Although generally CORA favors broad disclosure, the General Assembly recognized that not all documents should be subject to public disclosure. First, the definition of "public record" limits which documents are subject to disclosure under the statute. Further, that definition is limited by exceptions for certain documents that the General Assembly deemed inappropriate for disclosure such as work product, criminal justice records, and trade secrets. § 24–72–202(6)(a)(II), (6)(b); *see also City of Westminster v. Dogan Constr. Co.*, 930 P.2d 585, 589 (Colo.1997) ("Although the general purpose of the Act is to provide access to public records, the General Assembly qualified that purpose by providing specific exceptions to the statutory disclosure requirements."). Thus while the general purpose of CORA is to provide open government through disclosure of public records, CORA's purpose is not to disclose information that is not held by the government or that otherwise falls under an exception. In sum, CORA was not intended to cover information held by a government official in his private capacity. *See Johnson v. Bd. of County Comm'rs*, 85 F.3d 489, 493 (10th Cir.1996) ("When a governmental official is sued in his official and individual capacities for acts performed in each capacity, those acts are 'treated as the transactions of two different legal personages.'").

Consistent with the General Assembly's definition of public records, we have recog-

nized the distinction between private and public records. Our prior case law demonstrates that our decision today is in keeping with the greater protection we have traditionally afforded private documents.

First, we have previously distinguished between writings made in a public versus a private capacity. In *Downing v. Brown*, 3 Colo. 571, 590–91 (1877), a forgery case, we held that a probate judge's memorandum-book was a "convenient book of reference" and was not a book "of or belonging to any public office." The judge used the memorandum-book to record notes concerning applications about lots for which he was acting as the trustee. *Id.* at 590. We noted that the judge was not required to keep such a book, it was not evidentiary, and there were other documents that were deposited that served as pleadings in the contested cases. *Id.* As such, we concluded that the book had "no official character." *Id.* at 591; *accord Int'l Union, United Auto., Aerospace & Agric. Workers of America v. Voinovich*, 100 Ohio App.3d 372, 654 N.E.2d 139 (1995) (Governor's personal calendar which was made for his own convenience, to which he had sole access, and could destroy at any time, was not a public record, and to allow access would intrude on his subjective thoughts); *cf. Herald Ass'n, Inc. v. Dean*, 816 A.2d 469 (Vt. 2002) (Governor's calendar considered a public record because the calendar was created by his staff and was an essential part of the functioning of the Governor's office).

Similarly, in *People v. Trujillo*, 185 Colo. 14, 17, 521 P.2d 769, 770 (1974), another forgery case, we interpreted public records to include only those records "which were prepared by, and in, the custody of a public agency." Consequently, we held that an official could not have forged his application for promotion as that document did not fall within the ambit of public records. *Id.* at 771. Thus, we again distinguished between documents made in a public versus private capacity.

■ Our case law therefore reveals the distinction we have made between private and public documents made by public officials. Merely because a document is made during one's tenure as a public official does not render it a public record. While not applicable here, other provisions of CORA support this distinction. § 24–72–202(6.5)(a) (CORA exception to disclosure for documents that are work product and are deliberative in nature); *see also City of Colorado Springs v. White*, 967 P.2d 1042, 1045 (Colo.1998) ("[M]aterials falling within the ambit of the deliberative process privilege are not subject to disclosure in the context of a request for public records under the Colorado open records laws.").

Additionally, our prior case law illustrates the high value we have placed on the privacy of private papers. A diary is the foremost example of one's private papers. "Indeed, it would be difficult to imagine what 'papers and effects' should be more entitled to privacy than one's personal diary." *People v. Williams*, 192 Colo. 249, 254, 557 P.2d 399, 403 (1976). While we made that statement in the context of a search and seizure case, the sentiment is no less valid here. The highly personal nature of one's diary would cause even inspection by a court to be far too intrusive. *See Martinelli v. Dist. Court*, 199 Colo. 163, 173, 612 P.2d 1083, 1091 (1980) (citing *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)) (right of privacy protects "the individual interest in avoiding disclosure of personal matters").[4]

In short, both CORA and our prior case law demonstrate that while we deem the disclosure of public records and the creation of an open government important goals, we steadfastly guard against disclosure of private papers. The purposes behind CORA, open government and citizen access, generally are not furthered by disclosing public officials' every thought and feeling. Were we to allow such unfettered access, we would not only discourage public service, we would create an arena of gossip and scandal instead of facilitating a forum of open and frank discus-

---

4. While we note that this constitutional right to privacy exists, and could possibly be a bar to access of public records, we do not need to engage in that discussion in this case. Because we find that the diary here is not a public record, it does not come under the provisions of CORA. Thus, there is no need to discuss what would essentially be a defense to its disclosure.

sion about issues concerning public officials and the citizenry they serve.

### 3. Application

■ In the case before us, the Montrose Daily Press made a request under CORA for Hunt's diary. This request was denied both by the County Clerk and Recorder, who stated that she did not have custody, and by Hunt, who asserted that his diary was not a public record. The Daily Press then brought suit, which survived only against Hunt in his official capacity, demanding disclosure of the diary. We now decide that the Montrose Daily Press did not show that the diary was likely a public record. Consequently, CORA does not apply and the trial court is not authorized to order an in camera review of the diary.

Under CORA, a public record must be made, maintained, or kept by the state or political subdivision of the state. § 24–72–202(6)(a)(I), (5). The burden is on the plaintiff to establish that CORA applies, which includes showing that a public entity: (1) improperly; (2) withheld; (3) a public record. In the case of a record held by an individual who is also a public official, the plaintiff must present evidence that would show that the requested document is likely a public record in order to establish the third prong of the test to show that the Act applies.

The Montrose Daily Press has failed to show that the diary is likely a public record under CORA. In particular, they have not shown that the diary was made, maintained, or kept by a public entity.

First, the diary was made in Hunt's individual capacity and not in his official one. While there is some overlap between the two, as evidenced by the entries that spawned this case, one can hardly expect a public official to leave all of his thoughts relating to his work out of his personal diary. The inclusion of such thoughts does not render a personal paper a public record for the purposes of CORA. Furthermore, reference to an outline that included excerpts from his diary to recall the events leading up to the termination proceedings does not render the entire diary a public document. *See Forsham v. Harris,* 445 U.S. 169, 170, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980) (data which merely serves as the basis for a public document is not a public record under FOIA). Moreover, the outline used in the termination proceeding was given to the Daily Press.

Second, the diary was not maintained by the County. Hunt made entries into his diary in his individual capacity, and it was not used in the daily functioning of the office. Montrose County does not require Hunt to keep the diary nor has it ever attempted to exercise control over the diary.

Finally, the diary was not kept by the County or Hunt in his capacity as County Manager. Rather, he kept his diary locked and in his possession. He did not leave it at work or allow others to view it as one would a purely work related document. *See id.* ("FOIA applies to records which have been *in fact* obtained [by an agency], and not to records which merely *could have been* obtained.").

As the Montrose Daily Press has made no showing that Hunt's diary was made, maintained, or kept by Hunt in his official capacity, they have not made the threshold showing that the document is likely a public record. Consequently, CORA does not apply and the trial court is not authorized to review the diary in camera.

### IV. Conclusion

We hold that in cases where it is not clear whether the custodian holds a record in an individual or official capacity, and thus whether the record is private or public, the requesting party must make a threshold showing that the document is likely a public record. As the requesting party in this case did not show that a personal diary was likely a public record, the trial court is not authorized to conduct an in camera review of the defendant's personal diary. Therefore, we make the rule absolute.