TALLY *v*. STATE.*

(In Banc. Feb. 7, 1927. Suggestion of Error Overruled March 14, 1927.)

[113 So. 547. No. 25498.]

RECORDS. *To sustain conviction for secretion of paper of public office, state must prove secretion of effective paper belonging to or kept in such office for public purpose; concealment of blank teacher's certificates will not sustain conviction for concealing paper from public office (Hemingway's Code, sections 987, 7810, 7811, 7813).*

Under section 987, Hemingway's Code (section 1257, Code of 1906), punishing the felonious secretion or concealment, or the felonious taking or destroying, of any record, paper, or proceeding in a court of justice, or any paper or proceeding filed or deposited with any officer or in any public office, it is necessary for the state to prove such theft or fraudulent concealment of a live, effective paper, belonging to or kept in such office for some public purpose. The concealment of a mere blank form, not filled out to constitute effective paper or instrument, will not sustain a conviction.

ANDERSON and COOK, JJ., dissenting.

---

*Corpus Juris-Cyc. References: Records, 34Cyc, p. 616, n. 27; p. 617, n. 44 New; Statutes, 36 Cyc, p. 1183, n. 46; p. 1186, n. 49.

APPEAL from circuit court of Forrest county.
HON. R. S. HALL, Judge.

Frances Tally was convicted of concealing certificates and licenses from the office of the state superintendent of education, and she appeals. Reversed, and defendant discharged.

*Paul B. Johnson* and *J. W. Cassedy,* for appellant.

A peremptory instruction should have been granted defendant at the close of the state's case. The procedure required by law of an applicant for a teacher's license or exemption certificate is set forth in sections 7796, 7787 and 7805, Hemingway's Code. In each case there is prescribed by the statute the exact procedure required of the applicant before such applicant will be entitled to receive the license authorized to be issued by the state board.

In this case, it was not claimed by the state that the teachers' license or the exemption certificates made the subject of this indictment were any part or parcel of any such procedure on the part of any applicant to secure either an exemption certificate or a state teacher's license. To the contrary, it was shown by the testimony of the state which may be clearly seen by reference to the testimony of Mr. Huddleston and also by the testimony of W. F. Bond, the state superintendent of education, that in looking through the blank book and the blank stub and blank license, it was discovered that a number of such blank licenses had been torn from the book and removed.

From this testimony, appellant submits that it was certain that the exemption certificates and teachers' license certificates were neither a part of any proceeding in said office, nor were they a part of any of the records in said office. It is true both the superintendent and Mr. Huddleston were asked if the exemption certificates and the state teachers' license were a part of the records of this office and both of them stated in response to such questions that they considered them as such records.

This, we submit, is a conclusion drawn by the witness and such conclusion is not supported by the facts in the case. There is, as we see it, a wide distinction between a blank book composed of blank stubs and a blank form for a license and the same stub after the records have

been entered thereon, and the same blank form of license after the records have been likewise entered upon it.

Appellant respectfully submits that it was shown to a certainty that the blank exemption certificates and the blank teachers' license were in no sense of the word a record or a part of any pending proceeding in the state superintendent's office as charged in the indictment. And, for this reason, could not be the subject of larceny as denounced by section 987 under which this indictment is drawn.

*Alexander Currie,* District Attorney, and *J. A. Lauderdale,* Assistant Attorney-General, for the state.

The indictment in this case is predicated upon section 987, Hemingway's Code (section 1257, Code of 1906). The manifest purpose of this statute is to protect and preserve inviolate and intact the proceeds, records and papers of all of the public offices of this state and to prevent the theft, concealment or destruction of the proceedings, records or papers pertaining to any and all of the public offices of this state.

The office of the state superintendent of education is a constitutional office and the state superintendent of education is a constitutional officer. Section 202 of the Constitution of Mississippi. See, also, section 7593, Hemingway's Code (section 4817, Code of 1906); sections 7600, 7603, Hemingway's Code.

Certificates and licenses to teach are conditions precedent made so by law to authorize any person to teach in the public schools of this state and the very description of these certificates and licenses contained in the indictment; to-wit, "to teach in public schools," stamps upon them their official origin, character and nature. They are necessary parts of the papers and records of the office under the statutes of this state, parts of the papers and records of that office required by the statute of this state to be prepared and kept in that office as a necessary part of its papers and records.

It is the fact and the fact alone that the statute of this state requires the keeping of such papers and records, prepared and printed forms that constitutes them a necessary part of the papers and records of that office.

The state board of education is a constitutional board. Section 203, Constitution of Mississippi. Each member of this board is a constitutional public officer of the state. Section 7321, Hemingway's Code (section 4486, Code of 1906); section 7814, Hemingway's Code.

This statute expressly authorizes the state board of education, of which the state superintendent of education is chairman, to issue the very certificates and the very licenses described in the indictment in this case and makes that office and that officer the proper legal custodian of such certificates and licenses.

Other statutes herein quoted mandatorily require that the office of the state superintendent of education, which is also by statute made the office of the state board of education, keep blank forms and books containing these very certificates and licenses. And it is not true, as contended by counsel for the appellant, that such certificates and licenses are not required by law to be kept in the office of the state superintendent of education and comprise no part of the papers, records, and proceedings in that office. The exact contrary is true. The indictment properly charged that the exemption certificates and teachers' licenses, for the fraudulent concealing of which the appellant in this case was indicted and convicted, composed ''a part of the public records of said office.''

These certificates and licenses were prescribed and printed in the manner required by law and were bound in books required by law to be kept in that office, and were permanent books, papers and records of that office.

The purpose of this statute must be looked to in determining the question of the sufficiency of an indictment; and it does not require a strained construction of the statute to make it reach the offense charged against the

appellant in the indictment. The statute lays its finger
directly upon the allegations of the indictment—the very
certificates and indictments described in the indictment,
for the fraudulent concealment of which the appellant
was convicted.

Argued orally by *Paul B. Johnson* and *J. W. Cassedy,*
for appellant, and *J. A. Lauderdale* and *N. T. Currie,*
for the state.

ETHRIDGE, J., delivered the opinion of the court.

Appellant, Frances Tally, was indicted under section
987, Hemingway's Code (section 1257, Code of 1906),
and charged with the felonious secretion or concealment
of fourteen life exemption certificates and twenty-five
teachers' licenses, which had been lately before feloni-
ously taken, stolen, and carried away from the office of
the state superintendent of education of the state of Mis-
sissippi, the same being a part of the public records of
said office, the indictment charging that appellant "did
unlawfully, feloniously and fraudulently conceal the said
license to teach in public schools, against the peace and
dignity of the state of Mississippi."

A number of assignments of error was presented as
grounds for reversal of the conviction under this charge,
many of which present interesting questions, but it will
only be necessary in this opinion to deal with one, which
will dispose of the case, and that one is as to whether
or not a peremptory instruction should have been given
for the appellant to find a verdict of not guilty.

Said section 987, Hemingway's Code (section 1257,
Code of 1906), reads as follows: -

"*Larceny.—Court Records and Public Papers.*—The
stealing and carrying away, or fraudulently withdrawing,
concealing, or destroying or taking away any record,
paper, or proceeding of a court of justice, or any paper
or proceeding filed or deposited with any officer or in any

public office, shall be larceny without reference to the value of the record, paper, or proceeding so stolen, taken away, or destroyed, and shall be punished by imprisonment in the penitentiary not more than five years, or in the county jail not more than one year, and by fine not exceeding five hundred dollars, or both.''

The proof introduced to support a conviction shows that a certain number of licenses had been found, by means of a search warrant issued on complaint of the superintendent of education of Perry county, in appellant's possession. These appear to have been blank forms bearing certain numbers, and some of them signed by two members of the state board of examiners. From the evidence, it appears that in the office of the state board of examiners these blank forms are kept; that, when a certificate or license was granted to a teacher, a blank form was filled in with the name of the person to whom issued, and then properly signed by the officers, and a stub bearing like data retained in the office; that two members of the state board of examiners were frequently absent from the city, engaged in educational pursuits at other points in the state; and that they sometimes signed their names to blank certificates and licenses, so that the other member of the board of state examiners could fill in the blanks with name and other data and sign his own name and deliver the certificate or license to the person so entitled thereto; that such member never did this until the license or certificate was ready for delivery, at which time he filled in the stub with the same data, which stub was kept as a record in his office from which duplicates could be made up and issued in case of destruction or loss to the holder and owner of such certificate or license.

The officers of the department of education testified that none of the teachers' certificates or licenses had been filled in by the department and signed by the required officers, and that the stubs, instead of being filled in, were all blank.

It was discovered on one occasion that certain of these blanks had been detached from the books. On this being discovered, the state superintendent of education, being absent, was communicated with, and he returned to Jackson, and issued confidential letters to all county superintendents of education throughout the state, notifying them of this fact, and giving the numbers of the missing blanks. It appears that the superintendent of education of Perry county had been presented with one of these blank licenses filled in, by some person claiming to be a teacher, and, having this information from the office of the state superintendent of education that these blanks had been stolen, he instituted an inquiry, and by some means obtained information that such teacher had procured such blank from appellant, and that this blank had been filled in by the names of parties necessary, which caused said county superintendent of education to have issued a search warrant. When the officers went to the home of appellant, who was a married woman, she was absent, and the search warrant was presented to her husband, who refused to permit the search because he was the owner of the house and the search warrant did not properly describe the ownership thereof. A new search warrant was issued and the house searched. The husband of appellant told the officers that a certain trunk belonged to his wife, and they then searched this trunk, procuring the key thereto from her husband, and, unlocking it, therein found some forty-five of the alleged blank certificates and licenses.

The state superintendent of education and one of the members of the state board of examiners testified for the state, and each testified that these exemption certificates and licenses were not filled in upon the blanks and had not been filled in by the department, but had been filled in by other parties at the time they were abstracted and stolen, or taken from said office; that they did not know how said papers got out of their office, or who took them,

but that they had not been filled out and signed when they left their office.

There was no proof as to who took these certificates and licenses from said office.

The question presented is the construction of section 987, Hemingway's Code (section 1257, Code of 1906), as to the meaning of the terms "record, paper, or proceeding . . . filed or deposited with any court of justice or any paper filed with any officer or in any public office." Do the terms, "record, paper, or proceeding," cover blank paper, not signed, not filled in, or made ready and complete for delivery or use, come within the meaning of the terms of this statute?

We are of opinion that the papers referred to in this statute do not mean mere blanks, papers not filled in or kept on file as a record of the office, but merely for use in being filled in, and consequently issued when sufficient proceedings have been taken or sufficient action had to make them live papers, capable of being filed.

The statute is highly penal, and will be construed as a penal and criminal statute strictly, and will not be extended by a construction to cover things not within its purview. For instance, most of the chancery clerks of the state have blank forms for deeds and deeds of trust kept for the convenience of the public in preparing such papers, and usually have a blank book in the same form, which, when filled in, can be recorded with the least labor on the part of the clerical force of the office. One of the blank papers, although capable of being filled in, and when filled in, and acknowledged and delivered, becoming thereby effective, legally issued and depositable in said office, is not a record therein until so filled in, etc. Most of the clerical offices have forms or processes which can be filled in in appropriate cases without writing the entire contents of summons, citations, or other processes, but all of these blanks, before being filled in and signed, are not live instruments. It is not reasonable to assume that the legislature intended to make the taking of one

of these blank forms from the office a felony punishable with as much as five years in the state penitentiary. Similar blanks are, perhaps, kept in all public offices for some purpose, but being blank printed forms, have little or no value, and have no legal effect, and do not constitute legal papers within the purview of the statute. We are satisfied the legislature did not intend, by this statute, to penalize the mere taking of a blank from the clerk's office or from any public office. Of course, the taking of any blank book or blank paper against the will and consent of the officer might constitute petty larceny, and be punishable as such; also, the taking of a blank paper, and filling it in so as to make it appear to be a legal instrument, and forging the name of the officer thereto might constitute another crime, but we do not think it constitutes an infraction of the statute here referred to.

There are certain papers, of course, kept in the superintendent of education's office, both state and county, which constitute records and papers within the meaning of the statute, such as examination papers containing questions and answers propounded to teachers applying for licenses to teach when filed in the office as records therein, or for the purpose of receiving official action at the hands of the officers of that department, and these would come within the statute. If a teacher forwards to the state superintendent's office a license issued by a county superintendent, or papers made in the course of a teacher's examination for the purpose of having the grade of the county board reversed, they would come within the terms of the statute. If the licenses and certificates alleged to have been taken from said office had been filled in and signed by the proper authorities and ready to be delivered to the person entitled thereto, as efficacious papers of record, the taking of same from the office would constitute larceny within the terms of the statute, and the concealment of them, with knowledge of

the theft, would constitute fraudulent concealment within the statute.

The statute under consideration must be construed with reference to various other statutes conferring powers and imposing duties upon state and county superintendents of education, in determining what are records of said offices. The statutes are numerous and will not be set forth at length, but, as an illustration, a few may be referred to.

Section 7810, Hemingway's Code (section 4551, Code of 1906), provides that:

"There shall be a state board of examiners which shall consist of three members, who shall be first grade teachers of scholarly attainments, and of successful experience, to be appointed by the state superintendent of education."

Section 7811, Hemingway's Code (section 4552, Code of 1906), provides:

"It shall be the duty of the state board of examiners to aid the state superintendent of education in preparing all examination questions for the teachers of the state, to grade papers of applicants for professional and state licenses, to hear and decide all appeals from teachers or county superintendents regarding examinations; to examine all applicants or candidates for the office of county superintendent under regulations passed by the state board of education."

Section 7813, Hemingway's Code (section 4554, Code of 1906), provides:

"The state board of examiners shall receive as compensation for their services five dollars from each applicant for professional license; five dollars from each . . . candidate for county superintendent of education in the several counties of the state, and fifty cents for each applicant for state license, which sum shall be paid by the county superintendent of education to the state board of examiners, as teachers are paid, and as is now paid to county examiners. The state board of examiners

shall serve for four years each, unless removed by the state superintendent [of education] for cause.''

There are numerous other statutes that bear upon the question which we do not here set out; but it is manifest that papers sent up from the county superintendent of education to the state superintendent's office for the purpose of appeal from some decision would constitute a record of the said office, and a paper which was complete and an effective instrument legally would come within the purview of the statute. See the cases of *Patrick* v. *State,* 50 Tex. Cr. R. 496, 98 S. W. 840, 123 Am. St. Rep. 861, 14 Ann. Cas. 177.; *State* v. *Hill,* Houst. Cr. Cas. (Del.) 420; *State* v. *Holmes,* 9 Wash. 528, 37 P. 283; *McCarty* v. *State,* 1 Wash. 377, 25 P. 299, 22 Am. St. Rep. 152; *State* v. *Musgang,* 51 Minn. 556, 53 N. W. 874; *In re Corryell,* 22 Cal. 179.; *Downing* v. *Brown,* 3 Colo. 571, 590; *State* v. *Griswold,* 67 Conn. 290, 34 A. 1046, 33 L. R. A. 227.

We are therefore of the opinion that the evidence is not sufficient to sustain the conviction, and judgment of the court will therefore be reversed.

*Reversed and appellant discharged.*

ANDERSON, J. (dissenting).

I think the majority opinion nullifies the statute; makes it utterly useless. The controlling thought in the opinion seems to be that the paper or record stolen, or fraudulently withdrawn, or concealed must have some intrinsic value. The statute does not so provide by its language. On the contrary, its language is comprehensive enough to cover a paper or record of no intrinsic value whatever. In my opinion, the purpose of the legislature in the enactment of the statute was to cover any paper or record that might be made valuable by forgery.

COOK, J., joins in the above dissent.